## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ANGELA MALONEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 20-2516 (ABJ) |
| | ) | |
| ANTONY BLINKEN, | ) | |
| *Secretary, U.S. Department of State*, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

On September 8, 2020, plaintiff Angela Maloney filed this employment discrimination and retaliation action under the Rehabilitation Act of 1973, 29 U.S.C. §§ 791, 794 *et seq. See* Compl. [Dkt. # 1]. Her claims arise out of her five-year appointment with the United States Department of State as an entry-level Foreign Service Officer ("FSO") career candidate, during which time she developed a number of hand and wrist disabilities. *Id.* ¶¶ 2, 10, 16–17, 23; *see also* Def.'s Mem. of P.& A. in Supp. of Mot. [Dkt. # 7-1] ("Mem.") at 1, 3.[1]  Pending before the Court is defendant Secretary of State Antony Blinken's partial motion to dismiss or, in the alternative, motion for summary judgment on plaintiff's retaliation claim.[2]  Def.'s Partial Mot. to Dismiss Or, In The Alternative, for Summ. J. [Dkt. # 7] ("Mot.").

---

1       Citations to the record will refer to the .pdf page numbers of the submissions, which do not always align with the numbers at the bottom of the page.

2       Defendant was automatically substituted pursuant to Federal Rule of Civil Procedure 25(d).

The matter is fully briefed, and the motion to dismiss will be granted.[3]  Plaintiff has not exhausted that portion of her retaliation claim that challenged a denial of tenure in 2020, and she has not stated a claim for retaliation with respect to the agency's 2019 deferral of the tenure decision for further consideration in the future.

## BACKGROUND

Plaintiff was employed by the State Department as an entry-level Foreign Service Officer ("FSO") career candidate on the Political Affairs track between April 8, 2015, and July 4, 2020. *See* Compl. ¶¶ 16, 19; Mot. at 3.

According to the State Department's Foreign Affairs Manual, an entry-level FSO candidate has five years to "achieve" tenure or face mandatory separation from the Service.  *See* Ex. 1 to Mot. [Dkt. # 7-2] at 5–6, 11–12 ("FAM") §§ 2241.3(1), 2245.1.   The State Department's Commissioning and Tenure Board ("the Board") evaluates entry-level FSO candidates for tenure for the first time after thirty-six months of employment, *id.* § 2245.2(a), but according to the Department's Foreign Affairs Handbook, this decision can be deferred up to two times.  *See* Ex. 2 to Mot. [Dkt. # 7-2] at 26 ("FAH") § 2246.3(a)(1).

Section 2246.3(a)(1) states:

> The Board will:  [r]eview and make recommendations on the conferral of career status upon all FS-04 Foreign Service Officer candidates . . . as soon as possible after completion of 36 months of service.  A second review will take place after 48 months.  When the Board judges that additional evaluated experience may lead to a favorable tenuring decision, the Board

---

3       Decl. of Samantha Duncan [Dkt. # 7-2] ("Duncan Decl."); Def.'s Statement of Facts [Dkt. # 7-3] ("Def.'s SOF"); Pl.'s Mem. in Opp. to Def.'s Mot. [Dkt. # 14] ("Opp."); Pl.'s Resp. to Statement of Facts & Further Statement of Facts [Dkt. # 14-1] ("Pl.'s SOF"); Decl. of Angela Maloney and Exs. A–E [Dkt. # 14-2] ("Maloney Decl."); Decl. of Bryan Schwartz [Dkt. # 14-3] ("Schwartz Decl."); and Def.'s Reply in Supp. of Mot. [Dkt. # 15] ("Reply").

> may recommend a third review six months prior to expiration of the candidate's limited appointment.

FAH § 2246.3(a)(1).

In early 2016, during an assignment to Chennai, India, that involved visa adjudication, plaintiff "developed flexor tenosynovitis among other medical conditions as a result of the repetitive hand motions necessary" to the role. Compl. ¶ 16. She also suffers from bilateral carpal tunnel syndrome, *id.* ¶ 10, which together with her other hand and wrist conditions, limits her ability to lift, write, type, and grasp. *Id.* ¶ 17. According to plaintiff, these issues are exacerbated by the repetitive typing motions requiring of visa processing, which led her to take medical leave between February 2018 and October 2018, and again between February 2019 and her separation from the State Department in July 2020. *Id.* ¶ 19.

On April 9, 2018, plaintiff filed a class action lawsuit against defendant, alleging disability discrimination. *See Maloney v. Blinken*, No. 18-cv-0809-ABJ (*"Maloney I"*).[4] Shortly thereafter, in the summer of 2018, plaintiff first qualified for a review for tenure. The Board notified plaintiff in an email dated August 15, 2018, that it was deferring the decision on her tenure to a second review the following year:

> The cable listing those recommended for tenure by the Summer 2018 Commissioning and Tenure Board will soon appear. I am writing to you in advance to inform you that although the Board did not include you among those it recommended for tenure on this review, it did acknowledge your excellent progress as a career candidate. The Board specifically noted that there were no areas of significant concern in your performance but, as is often the case, wanted to have additional evaluated work experience before

---

4       That case is still pending before the Court, and it is unaffected by the instant motion.

> making its recommendation.  You will be reviewed again for tenure by the
> Summer 2019 Commissioning and Tenure Board.

Ex. 4 to Mot. [Dkt. # 7-2] at 31 ("Summer 2018 Board Decision").  Plaintiff does not challenge

that decision in this lawsuit.  *See* Opp. at 8 ("[Plaintiff] is challenging the failure to recommend

tenure in 2019[.]").

During the 2019 performance evaluation cycle, plaintiff was again considered by the Board

for tenure, and in June, the decision was again deferred, this time for six months in accordance

with FAH subsection 2246.3.  The June 17, 2019 email to plaintiff stated:

> The cable listing those recommended for tenure by the Summer 2019
> Commissioning and Tenure Board will soon appear.  I'm writing to you in
> advance to inform you that the Board did not include you among those it
> recommended for tenure on this review.  You have, however, been granted
> a third review for tenure to be performed in six months by the **Winter 2019
> Commissioning and Tenure Board**.

Ex. 5 to Mot. [Dkt. # 7-2] at 34 ("Summer 2019 Board Decision") (emphasis in original).

On August 30, 2019, plaintiff filed an administrative complaint with the State

Department's Office of Civil Rights ("OCR").  *See* Ex. 7 to Duncan Decl. [Dkt. # 7-2] at 40–46

("2019 OCR Complaint"); *see also* Compl. ¶ 27.  She alleged that on May 17 and June 7, 2019,

she was discriminated against for her physical disabilities ("chronic tenosynovitis, ganglion cyst")

and retaliated against for engaging in prior protected activity and opposing discriminatory

policies.  2019 OCR Complaint at 41–42, 44–46.  It was acknowledged on September 3, 2019

(Case No. 570-2020-00213X).  *See* Compl. ¶ 27.

On June 19, 2020, the Board completed its third and final tenure review, and it made, for

the first time, the "decision not to grant [plaintiff] tenure," which required that plaintiff separate

from the State Department within thirty days.  Ex. 6 to Mot. [Dkt. # 7-2] at 37–38 ("Spring 2020

Board Decision"); *see also* FAM § 2246.2-1(d).  On August 21, 2020, plaintiff filed a second

complaint with the OCR – this time concerning the June 2020 denial of recommendation for tenure that resulted in her termination.  *See* Ex. 8 to Duncan Decl. [Dkt. # 7-2] at 47–52 ("2020 OCR Complaint").

On September 8, 2020, plaintiff filed the instant lawsuit, alleging in Count I that the agency failed to accommodate her disability and engage in the interactive process when she lost career opportunities, including "being denied tenure," Compl. ¶ 41, and in Count II that defendant retaliated against her when "she was denied tenure and other career opportunities," and "denied accommodations and denied a good-faith interactive process."  *Id.* ¶ 49.  Plaintiff seeks compensatory damages, including for emotional distress and lost wages and benefits.  *Id.* ¶ 53.

Defendant filed a partial motion to dismiss, asking the Court to dismiss Count II – plaintiff's claim for retaliation – on two grounds:  (1) that she failed to exhaust her administrative remedies with respect to the 2020 denial of tenure before she filed the instant complaint, and (2) that she failed to state a plausible retaliation claim based on the deferrals of the tenure decision because a deferral is not an actionable adverse employment action, and the complaint does not allege facts that give rise to an inference of any causal connection between plaintiff's protected activities and the deferrals.  *See* Mem. at 2, 8–10.

Now that the matter is fully briefed, the only issue for the Court to resolve is whether Count II states a claim that the 2019 decision to defer the tenure review was retaliatory.[5]

## STANDARD OF REVIEW

In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

When considering a motion to dismiss under Rule 12(b)(6), the Court must construe a complaint liberally in the plaintiff's favor, and it should grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994), citing *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979). That said, the Court is not required to accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See Kowal*, 16 F.3d at 1276; *see also Iqbal*, 556 U.S. at 678 (internal citation omitted) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

---

5       Defendant's original pleading moved to dismiss or, in the alternative, for summary judgment on, the retaliation claim.  But defendant has withdrawn the motion for summary judgment, as the parties are in agreement that the 2020 denial of tenure decision has not been exhausted, and the only issue to be addressed in the instant motion is the 2019 deferral of a decision on tenure.  *See* Reply at 3 ("[T]he Court need not convert Defendant's motion into a summary judgment motion under Federal Rule of Civil Procedure 12(d), as Defendant offered the relevant EEO materials only to show that Plaintiff failed to exhaust any claim related to the Board's 2020 decision."); *see also* Opp. at 8 ("Plaintiff's Complaint makes clear that she is challenging the failure to recommend tenure in 2019, which was the subject of her internal and EEOC exhaustion.").

In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

## ANALYSIS

The Rehabilitation Act makes it unlawful for an employer to engage in "retaliation against or coercion of individuals who seek to vindicate the rights guaranteed by the statute." *Solomon v. Vilsack*, 763 F.3d 1, 5 (D.C. Cir. 2014), citing Title VII, 42 U.S.C. §§ 12203(a)–(b). The statute creates a cause of action for retaliation that is governed by the same legal standard as a retaliation claim under Title VII. *See* 29 U.S.C. § 701 *et seq.*; 42 U.S.C. § 2000e-16; *see also Totten v. Norton*, 421 F. Supp. 2d 115, 118 n.2 (D.D.C. 2006); *Duncan v. Wash. Metro. Area Transit Auth.*, 214 F.R.D. 43, 49–50 (D.D.C. 2003), citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

To establish a prima facie case of retaliation, "the plaintiff must present evidence that (1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) the adverse action was causally related to the exercise of her rights." *Holcomb v. Powell*, 433 F.3d 889, 901–02 (D.C. Cir. 2006) (internal citations omitted). In the retaliation context, an adverse action is one that is "harmful to the point that [the employer's action] could well dissuade a reasonable worker from making or supporting a charge of discrimination," *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006), and it is highly dependent on the "particular circumstances" of plaintiff's employment. *Id.* at 69. Unlike in the discrimination context, the "scope of the antiretaliation provision extends beyond workplace-related or

employment-related retaliatory acts and harm," *id.* at 67, and it "encompass[es] a broader sweep of actions" than wrongful discrimination." *Bridgeforth v. Jewell*, 721 F.3d 661, 663 n.* (D.C. Cir. 2013).

But even in the retaliation context, the category of adverse events does not include trivial harms: "[a]ctionable retaliation claims are limited to those where an employer causes 'material adversity,'" and the plaintiff still must suffer some objectively tangible harm. *Wiley v. Glassman*, 511 F.3d 151, 161 (D.C. Cir. 2007) (emphasis in original), citing *Burlington N.*, 548 U.S. at 68; *see also Holcomb*, 433 F.3d at 902. The D.C. Circuit has noted that an actionable event is one that would "affect the employee's 'position, grade level, salary, or promotion opportunities.'" *Taylor v. Solis*, 571 F.3d 1313, 1321 (D.C. Cir. 2009), quoting *Baloch v. Kempthorne*, 550 F.3d 1191, 1199 (D.C. Cir. 2008). The standard is an objective one that is phrased "in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Burlington N.*, 548 U.S. at 69.

As in a Title VII action, a plaintiff must show that retaliation was a "but-for" cause of the adverse employment action, rather than a substantial or "motivating" factor in the employer's decision. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* at 360.

## I. The claim for denial of tenure in 2020 has not yet been exhausted.

Before a plaintiff can bring a claim for retaliation under the Rehabilitation Act, however, she must exhaust her available administrative remedies. *See, e.g.*, *Barkley v. U.S. Marshal Serv. ex rel. Hylton*, 766 F.3d 25, 33 (D.C. Cir. 2014) (Rehabilitation Act claims must be administratively exhausted before a plaintiff may resort to judicial proceedings), citing

29 U.S.C. § 794a(a)(1).  According to the D.C. Circuit, "the required recourse to administrative review has special prominence with respect to the . . . claims of federal employees," like the plaintiff here.  *Kizas v. Webster*, 707 F.2d 524, 542 (D.C. Cir. 1983).  Failure to exhaust administrative remedies is an affirmative defense.  *See Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995).

As defendant has established, and as plaintiff does not dispute, to the extent that plaintiff seeks to challenge defendant's *denial* of tenure, specifically the decision by the Board in the spring of 2020 which resulted in her mandatory separation from the Foreign Service, she has not exhausted her administrative remedies.  *See* Opp. at 8 ("[Plaintiff] is challenging the failure to recommend tenure in 2019, which was the subject of her internal and EEOC exhaustion.").  While plaintiff asserted in her opposition that the limited scope of Count II is something her complaint "makes clear," *id.*, the language of the complaint blurred the issue considerably,[6] and therefore, the Court will address the question briefly.

Plaintiff's August 2019 complaint, which preceded the decision denying tenure by nearly eleven months, only challenged the Summer 2019 Board's deferral of any decision on plaintiff's tenure:

> Complainant was denied a recommendation for tenure during the 2019 evaluation cycle solely because, although her rater and reviewer had time to evaluate her performance, and her rater concluded that she "did everything [he] expected . . . and more", her rater and reviewer concluded

---

6        Plaintiff refers to the deferral of a decision on tenure as a "denial" of tenure half a dozen times in her complaint.  Compl. ¶¶ 3, 18, 24, 41, 49; *see also id.* Section IV.

that they did not have sufficient time to evaluate whether she should be recommended for tenure.

2019 OCR Complaint at 44.

Plaintiff filed a second OCR complaint on August 21, 2020, two months after the Board denied tenure, *see* 2020 OCR Complaint, so those proceedings were still pending when plaintiff filed this lawsuit one month later on September 8, 2020.  At that point, it was well short of the date the second OCR complaint could be considered exhausted.  *See* 29 C.F.R. § 1614.407(b) (authorizing civil actions if no final action is taken within 180 days after a complaint is filed).

Therefore, to the extent that Count II of the complaint appears to challenge the denial of tenure, that aspect of the claim will be dismissed on exhaustion grounds.

## II.     The complaint fails to state a claim based on the 2019 deferral of the tenure decision.

### A.  Plaintiff engaged in protected activity.

To support a claim of retaliation, a plaintiff must show that she engaged in a statutorily protected activity, such as filing a formal complaint with an agency.  *See Duncan*, 214 F.R.D. at 50, citing *McDonnell Douglas*, 411 U.S. at 802, and *McGill v. Munoz*, 203 F.3d 843, 845 (D.C. Cir. 2000).  Defendant does not dispute that plaintiff engaged in protected activity with the filing of the class action lawsuit in 2018 and the 2019 OCR complaint regarding the Summer 2019 Board Decision.

### B.  Deferring a tenure decision is not an adverse employment action that can support a retaliation claim.

Plaintiff alleges that defendant retaliated against her by "den[ying] a recommendation for tenure during the 2019 evaluation cycle solely because her rater and reviewer concluded that Plaintiff had not accrued sufficient time on the job."  Compl. ¶ 18.  Defendant moves to dismiss

on the grounds that deferral of a tenure decision does not constitute a materially adverse employment action that can support a retaliation claim, and circuit precedent requires that the motion be granted.

The bar for what constitutes an adverse action in a retaliation case is lower than what must be shown in "a pure discrimination claim," *Baloch*, 550 F.3d at 1198 n.4, as the category includes actions that would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N.*, 548 U.S. at 68 (internal quotation and citation omitted). But the Court must consider whether the challenged employment action caused a plaintiff to experience "materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." *Wiley*, 511 F.3d at 161, quoting *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002).

According to the agency's Foreign Affairs Manual, the Board's review of entry-level candidates can result in a recommendation for tenure, a denial of tenure, or a deferral of the decision until a later time. *See* FAM § 2245.2(a). The manual explains that the deferral option is intended to address unique circumstances:

> Board review will take place in accordance with the provisions and schedule set out in this subchapter. In unusual circumstances, such as unavoidable absence of an evaluation report, recent assumption of new duties, or other conditions that would make Board review at the scheduled time inequitable, the candidate may request, or the Department may recommend, that review be deferred until a succeeding session of the Board, rather than proceeding with review on schedule with the possibility of denial of tenure and lengthy delay before the next scheduled review.

FAM § 2245.6 (emphasis removed). While a decision denying tenure could be considered a materially adverse action, because it automatically triggers termination proceedings, *see*

FAM § 2246.2-1(d), a deferral eliminates the possibility of a denial and simply calls for a subsequent review, maintaining the employment status quo in the interim.

Even viewing the evidence in the light most favorable to plaintiff, the 2019 deferral cannot be considered adverse. The Board did inform plaintiff that she was not included in the group recommended for tenure, but it added that she had been "granted" a third review in six months. Summer 2019 Board Decision at 34. Plaintiff does not allege that any negative consequences flowed from this postponement beyond the mere conclusory allegation that she lost "other" unspecified career opportunities in 2019. Compl. ¶ 49. Plaintiff expounds on this in her opposition, explaining that had she been granted tenure, "she [would] gain job security . . . and would have been immediately eligible for consideration for a promotion to a higher grade level with increased pay, and would have enjoyed greater control over her assignments." Opp. at 11–12, citing Maloney Decl. That may be true, but those opportunities were not "lost" until tenure was definitively denied, and plaintiff cannot transform the mere postponement of a consequential decision into an adverse event with nothing more than vocabulary – referring to it as a "refusal to grant" or a "failure to recommend" tenure instead of as a decision to defer. Opp. at 7, 8.

To the extent plaintiff is suggesting that the deferral implicitly cast her job performance in a negative light, the D.C. Circuit has cautioned that even explicit "job-related constructive criticism" would not necessarily meet the standard of an adverse action. *Baloch*, 550 F.3d at 1199. For example, in *Welch v. Skorton*, 299 F. Supp. 3d 102 (D.D.C. 2018), another court in this district concluded that without "tangible harm, such as the potential that a negative performance review could affect an employee's position, grade level, salary, or promotion opportunities," a mere negative assessment could not be materially adverse. *Welch*, 299 F. Supp. 3d at 113, citing *Baloch*, 550 F.3d at 1199. And here, the Board's deferral decision does not include any evaluation, positive

or negative; as plaintiff herself emphasizes, the Board based its deferral "solely" on a lack of "sufficient time on the job" to provide a basis for a meaningful evaluation.  Compl. ¶ 18.  Even if the deferral left plaintiff uncertain about her future employment status at the State Department, the relevant inquiry is whether the complaint tied that uncertainty to any tangible harm.  *See Welch*, 299 F. Supp. 3d at 113; *see also Brookens v. Solis*, 616 F. Supp. 2d 81, 91 (D.D.C. 2009) (denying the plaintiff a detail to another assignment that would have provided training, experience, and opportunities for promotion was not adverse in the absence of some detriment to the present employment).

An employee can make out a case for retaliation based on changes in a performance review when it is tied to "financial harms," *Baloch*, 550 F.3d at 1199, but plaintiff has not alleged that the Summer 2019 Board Decision negatively affected her compensation as a FSO career candidate as she awaited the next tenure review.  *See Taylor*, 571 F.3d at 1321, citing *Baloch*, 550 F.3d at 1199 ("[Plaintiff]'s bare, conclusory allegation that she was denied promotional and bonus opportunities '[a]s a result of [the employer]'s unlawful conduct in violating Title VII's prohibition against retaliation' does not discharge her burden to show the evaluations were 'attached to financial harms.'").  Nor does she allege that it affected her job assignments, or any other aspect of her work.

Therefore, the Court will grant defendant's motion to dismiss Count II because plaintiff has failed to plausibly allege that she suffered a materially adverse employment action when the Board deferred a decision on tenure in 2019.[7]

### C. The complaint does not allege any facts showing a causal connection between the protected activity and challenged action.

If the Court were to conclude that the deferral was materially adverse, plaintiff would have to allege sufficient facts to support a plausible inference that a retaliatory motive was the "but-for" cause of the Board's decision to defer a decision on tenure for another six months. *See Univ. of Tex. Sw. Med. Ctr.*, 570 U.S. at 360. "A plaintiff alleging retaliation faces a relatively low hurdle at the motion to dismiss stage," *Jones v. Bernanke*, 685 F. Supp. 2d 31, 40 (D.D.C. 2010), but causation is "evaluated [on] the specific facts of each case," *Hamilton v. Geithner*, 666 F.3d 1344, 1358 (D.C. Cir. 2012) (citation omitted), and here, the complaint falls short.

---

[7]    Plaintiff's arguments to the contrary are inapposite.  The cases she cites involve the *denial* of tenure, *see* Opp. at 11, citing *Dodd v. City Univ. of New York*, 17 Civ. 9932 (PAE), 2020 WL 5750715, at *36 (S.D.N.Y. Sept. 25, 2020), and *Barron v. Univ. of Notre Dame Du Lac*, 93 F. Supp. 3d 906, 913–14 (N.D. Ind. 2015), which everyone agrees is not yet before the Court.

Plaintiff also cites *Kouassi v. W. Ill. Univ.*, Case No. 13–cv–1265, 2015 WL 2406947, at *17 (C.D. Ill. May 19, 2015), for the proposition that denying tenure and offering another tenure review in a year's time could constitute an adverse employment action. *See* Opp. at 11.  However, the university's review of the assistant professor in *Kouassi* constituted a formal denial of tenure with an invitation to resubmit the application – not a deferral of the tenure decision. *See* 2015 WL 2406947, at *17 (emphasis added) (internal citation omitted) ("[P]recedent suggests that the initial *denial* of tenure constitutes an adverse employment action . . . even if a university subsequently reconsiders its decision.").

Moreover, these decisions all relate to denying academic tenure, which typically arise in what is specifically recognized to be a unique context within employment discrimination jurisprudence. *See Spaeth v. Georgetown Univ.*, 943 F. Supp. 2d 198, 210 (D.D.C. 2013), citing *Zahorik v. Cornell Univ.*, 729 F.2d 85, 92–94 (2d Cir. 1984).

14

One factor to be considered in assessing allegations of causation is the relationship in time between the protected activity and the alleged retaliation.  *See Hamilton*, 666 F.3d at 1357 ("For . . . retaliation, [t]emporal proximity can indeed support an inference of causation, but only where the two events are very close in time.") (internal citation omitted).  Here, plaintiff alleges that she engaged in protected activity by "trying to engage in the interactive process with DOS, filing internal EEO complaints, filing EEOC formal complaints, and filing the pending class action."  Compl. ¶ 47.  But the class action was filed in April of 2018, *see Maloney I*, No. 18-cv-0809, more than a year before the July 2019 decision to defer the tenure review, and the prerequisite administrative complaints were filed before that.

Moreover, the Supreme Court has held that if the official responsible for the allegedly adverse action is unaware of the employee's earlier protected activity, then the employee cannot establish the causation needed to sustain a retaliation claim.  *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272–73 (2001); *see also Holbrook v. Reno*, 196 F.3d 255, 263 (D.C. Cir. 1999) (internal citation omitted) (To establish the requisite causal connection, the plaintiff must come forward with evidence that her employer "had knowledge of [her] protected activity, and that the adverse personnel action took place shortly after that activity.").  Plaintiff alleges that the State Department was aware of her activities, Compl. ¶¶ 47–48, but nowhere in the complaint does plaintiff allege that any member of the Board was aware of that information.

Plaintiff attempts to redress this omission by arguing in her opposition that while her reviewers may not have known of her administrative activity, the direct supervisors who prepared

the performance reviews the Board would consider were.  *See* Opp. at 13–14.  Based on that, she
submits:

> Plaintiff has properly alleged that the denied tenure recommendation was
> causally connected to her protected activities.  Even if the evidence
> ultimately shows that the members of the tenure Board were not themselves
> aware of Plaintiff's protected activities,[] the Board relied for its decision
> not to grant tenure in 2019 on the facts and recommendations from those
> who were well aware of the protected activities . . . As such, Defendant can
> be subject to "cat's paw" liability.

Opp. at 14–15 (footnote omitted), citing *Staub v. Proctor Hosp.*, 562 U.S. 411, 421 (2011), and

*Morris v. McCarthy*, 825 F.3d 658, 668 (D.C. Cir. 2016).

In *Staub*, the Supreme Court described the circumstances under which the discriminatory

animus of an employee who set events in motion, but is not the ultimate decision maker, could

be found to be "a motivating factor" in an adverse employment decision.  *See* 562 U.S. at 422.

> Under a cat's-paw theory of discrimination, an employer may be held liable
> for discriminatory acts by a direct supervisor – even where that supervisor
> is not the final decisionmaker – if '[1] [the] supervisor performs an act
> motivated by [discriminatory] animus [2] that is *intended* by the supervisor
> to cause an adverse employment action, and . . . [3] that act is a proximate
> cause of the ultimate employment action.'

*Morris*, 825 F.3d at 668, quoting *Staub*, 562 U.S. at 422 (emphasis in original).  Putting aside the

question of whether *Staub* can be applied in the context of retaliation case, where the unlawful

animus must be the "but-for" cause of the adverse action as opposed to "a motivating factor,"

*Univ. of Tex. Sw. Med. Ctr.*, 570 U.S. at 362, the complaint is devoid of any facts that would

support this theory either.

Indeed, plaintiff alleges that the "sole" reason the Board deferred the decision on tenure

was "because her rater and reviewer concluded that Plaintiff had not accrued sufficient time on the

job," Compl. ¶ 18, and the "only reason Plaintiff had not accrued more time on the job was because

she was forced to go on medical leave" for the majority of the review period. *Id.* ¶ 19.  This does not come close to suggesting that the reviewers' decisions were somehow tainted by any retaliatory animus of their own or harbored by her direct supervisors.

Without any facts in the complaint alleging that the members of the Board had knowledge of plaintiff's protected activity or that there was temporal proximity between those activities and the challenged actions, plaintiff has not alleged the causal connection needed to state a claim of retaliation.[8]

## CONCLUSION

For these reasons, defendant's partial motion to dismiss will be granted, and Count II will be dismissed.  A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  September 22, 2021

---

[8]    In paragraph 49 of the complaint, plaintiff alleges that she "was subjected to adverse treatment when she was denied tenure and other career opportunities in 2019, after having filed the pending class action, and when she was denied accommodations and denied a good-faith interactive process."  Compl. ¶ 49.  But this vague conclusory reference to a failure to accommodate adds nothing to the retaliation claim.  *See Prescott-Harris v. Fanning*, Civ. Action No.: 15-1716 (RC), 2016 WL 7223276, at *8 (D.D.C. Dec. 12, 2016) (citation omitted) ("Notably, the denial of a request for accommodation cannot by itself support a claim of retaliation based on the request.").

Courts in this district have held that "if the denial of a request for accommodation could itself support a claim of retaliation based on the request, then every failure-to-accommodate claim would be doubled," *Floyd v. Lee*, 968 F. Supp. 2d 308, 334 (D.D.C. 2013), as so "the subject of plaintiff's failure to accommodate claim . . . does not supply grounds for a separate retaliation claim."  *Buie v. Berrien*, 85 F. Supp. 3d 161, 178 (citation omitted) (D.D.C. 2015).